# In the United States Court of Federal Claims

No. 13-116C
(Filed under seal February 22, 2013)
(Reissued February 27, 2013)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **METTERS INDUSTRIES, INC.,** | Preliminary injunction; pre-award bid protest; small business set-aside; GSA schedule contract task order; appeal of size determination pending before SBA's Office of Hearing and Appeals; explicitly required size status recertification, 13 C.F.R. § 121.404(g)(3)(v). |
| Plaintiff, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pamela J. Mazza, PilieroMazza PLLC, Washington, D.C., for plaintiff. *Isaias "Cy" Alba, IV, Patrick T. Rothwell, Kathryn V. Flood*, and *Brian F. Wilbourn,* all of Washington, D.C., of counsel.

*Scott R. Damelin*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director, all of Washington, D.C., for defendant. *Michael Kraycinovich*, U.S. Army Materiel Command, Redstone Arsenal, Alabama, and *Capt. Tudo Pham*, Contract and Fiscal Law Division, U.S. Army Legal Services Agency, Fort Belvoir, Virginia, of counsel.

### ORDER GRANTING A PRELIMINARY INJUNCTION[1]

This case comes before the Court on plaintiff Metters Industries, Inc.'s motion for a preliminary injunction. In November, Metters was determined to be the "apparent awardee" of a task order for logistics support services to be issued by

---

[1] This order was originally filed under seal, to give the parties the opportunity to propose redactions. Only the plaintiff has proposed redactions, to which the defendant does not object, to protect a competition-sensitive identity. With these two redactions, and some minor, non-substantive corrections, the order is released for publication.

the U.S. Army Aviation and Missile Command ("AMCOM" or "agency").  *See* Ex. H to Pl.'s Mem. ("Pl.'s Ex.") at 1; App. to Def.'s Opp'n ("Def.'s App.") at A15.  The task order was "a total set-aside for small business concerns," solicited from holders of U.S. Army "Expedited Professional Engineering Support Services" ("EXPRESS") Blanket Purchase Agreements ("BPAs").  Pl.'s Ex. B at 1; Pl.'s Ex. L at 1; Def.'s App. at A2.  In response to the agency's request for a formal size determination, on January 25, 2013, the Area II Office of Government Contracting ("Area Office") of the U.S. Small Business Administration ("SBA") issued a determination that the plaintiff was "not a small business concern for the subject procurement."  Pl.'s Ex. J at 11; Def.'s App. at A30.

The plaintiff has appealed that determination to SBA's Office of Hearings and Appeals ("OHA"), *see* Pl.'s Ex. A, and has filed this bid protest seeking to enjoin AMCOM from awarding the task order to another contractor before OHA decides its appeal.  At first blush, it did not appear to the Court that the plaintiff's appeal had much likelihood of success.  The North American Industry Classification System ("NAICS") code for the task order limits the size of eligible contractors at $35.5 million in annual receipts, a level beyond which Metters has admittedly grown.  *See* Compl. ¶ 20; Pl.'s Ex. F at 1; Pl.'s Ex. G at 2.  And the Task Order Request for Quotations ("TORFQ") advises offerors "that the quotation contents require you to provide the socio-economic status for yourself" and that "submission of this information serves as confirmation that the status shown is the same as that identified in the applicable GSA schedule . . . as of the date of your task order quotation submission."  Pl.'s Ex. B at 1; Def.'s App. at A2.

But Metters cites the SBA regulation which provides that "[a] concern that qualified as a small business at the time it receives a contract is considered a small business throughout the life of that contract," 13 C.F.R. § 121.404(g) (2012) --- a provision which apparently applies to orders from multiple-award contracts, such as plaintiff's General Services Administration ("GSA") Logistics Worldwide ("LOGWORLD") schedule contract.  *Id.* § 121.404(g)(3).  Under this regulation, the "size status" of a business is determined as of the time the offer for the schedule contract is submitted, *id.* § 121.404(a), and this status apparently lasts until certification is again required --- which happens upon contract novation, merger or acquisition, or after five years when a contract is of longer duration.  13 C.F.R. § 121.404(g)(1)-(3).  The plaintiff maintains that it updated its LOGWORLD contract on March 30, 2009, at which time it recertified as small (and sized below the TORFQ size limit), and is not required to recertify under the regulations until March 30, 2014.  Compl. ¶ 20; Pl.'s Ex. G at 2; Pl.'s Ex. I at 7-9.[2]

---

[2] The defendant suggests that an offer responding to the TORFQ should be considered the "initial offer (or other formal response to a solicitation) which includes price," triggering size status determination under 13 C.F.R. § 121.404(a).

Although under a provision of the Federal Acquisition Regulation ("FAR"), "[o]rdering activities should rely on the small business representations made by schedule contractors at the contract level," 48 C.F.R. § 8.405-5(b) (2012), the SBA regulations recognize the discretion of a contracting officer to require schedule contract holders to show that they are still small when placing an order. Thus, "[w]here the contracting officer explicitly requires concerns to recertify their size status in response to a solicitation for an order, SBA will determine size as of the date the concern submits its self-representation as part of its response to the solicitation for the order." 13 C.F.R. § 121.404(g)(3)(v). Consequently, the status of Metters as small under the relevant NAICS code does not necessarily turn on its current size. First, it must be determined if the TORFQ "explicitly require[d]" recertification.

Metters provides further context for the TORFQ language. On May 26, 2010, EXPRESS BPA holders were given notice, in a letter from an AMCOM contracting officer, "that certification of business size at task order award will not be required on TORFQs issued after the date of this letter," as the agency decided "to resume reliance on GSA schedule certification as the method by which business size is determined for purposes of EXPRESS." Pl.'s Ex. D; Compl. ¶ 8. And one week after the TORFQ was issued, in a question and answer session the agency specifically referenced FAR § 8.405-5(b) in explaining that size certification is not required when responding to task order quotation requests. *See* Compl. ¶ 10; Pl.'s Ex. C at 1. Instead, the size representation made for the GSA schedule contract "will be valid until the BPA holder is required to recertify on its GSA schedule," with such recertification "required upon merger or acquisition, or upon renewal of the schedule." Pl.'s Ex. C at 1.

Against this backdrop, the interpretation of the relevant TORFQ language is a less easy matter. The size status of a business is determined at the time of certification or recertification, 13 C.F.R. § 121.404(a),(g), and the agency had adopted the policy of not requiring recertification in response to task order solicitations. In that light, a request to provide one's "socio-economic status" might mean the status as determined at the last certification, rather than the current size. *See* Pl.'s Ex. B at 1; Def.'s App. at A2. And "confirmation that the status shown is the same as that identified in the applicable GSA schedule" might mean to verify the GSA schedule status "as of the date of your task order quotation submission," as opposed to verifying the current size. *See* Pl.'s Ex. B at 1; Def.'s App. at A2. In any event, the agency did not use words that unambiguously requested offerors to certify their current sizes.

---

*See* Def.'s Opp'n at 15-16. But this portion of the regulation was not the basis for the Area Office's decision. *See* Pl.'s Ex. J at 3-11; Def.'s App. at A22-A30.

The strongest evidence that the agency's intent was not to request a recertification of business size status is found in the declaration of [Mr. X], a Metters employee.  *See* Pl.'s Ex. K.  Mister [X] relates a conversation with the contracting officer, in which the eligibility of the first awardee, LMI Consulting, Inc., was discussed.  Apparently, the contracting officer "indicated that he was aware that LMI Consulting Co. had been acquired by a large business, and would not be able to recertify as small if it was required to do so," but did not believe that recertification was yet required.  Pl.'s Ex. K at 1-2.  The willingness of the agency to award the task order to a known large business without requiring certification of size status is impossible to reconcile with the interpretation of the TORFQ as requiring certification.

To be sure, there is evidence that might support the view that a certification was being requested.  For instance, the May 26, 2010 notice could be read to suggest that specific TORFQs could request certification, Pl.'s Ex. D.  And after the Area Office, upon the protest of Metters,[3] determined that LMI Consulting was ineligible to receive the task order on the ground that the TORFQ explicitly required recertification, *see* Pl.'s Ex. E at 4-5, the contracting officer issued a separate certification request that he characterized as "consistent with the instruction in the . . . [TORFQ] issued on August 3, 2012."  Pl.'s Ex. F at 1; Def's App. at A11; *see also* Def.'s App. at A15; Pl's Ex. H at 1 (contracting officer's Nov. 9, 2012 request for a formal size determination of Metters, referencing his "instruction for recertification in the [TORFQ]").  But the former is more naturally read as referring to task order solicitations previously issued, and the latter more likely reflects the contracting officer's conformance of his interpretation to the Area Office's first decision.

In the final analysis, the potential success of the appeal of Metters requires an assessment of the likelihood of OHA finding the Area Office decision to be based "on clear error of fact or law."  13 C.F.R. § 134.314 (2012).  The Court confesses to some difficulty in following the reasoning of the Area Office decision.  "The explicit language" that was found to be a request for certification as of the date of offer submission was a sentence that says the awardee's "signature on the task order award serves as confirmation that the socio-economic status provided in the quotation is the same as that identified in the applicable GSA schedule . . . as of the date of your signature on the task order award."  Pl.'s Ex. J at 8; Def.'s App. at A27.[4]

---

[3]  Metters sought LMI Consulting's disqualification on a different basis --- that the latter's acquisition by a large company triggered the recertification requirement of 13 C.F.R. § 121.404(g)(2).  *See* Pl.'s Ex. A at 5-6.

[4]  The phrase the Court elides from this quote --- "subject to the NAICS applicability defined in the BPA and the current associated size standards established by the

It is not clear why the confirmation of GSA schedule status on *the day of receipt* of award proves that the size of a business on *the day of offer submission* was being requested, much less being requested explicitly. This "explicit request" is then said to be "reinforced" by the preceding sentence in the TORFQ, which stated that an offer will be considered confirmation of GSA schedule status "as of the date of the task order quotation submission." Pl.'s Ex. J at 8; Def.'s App. at A27. Unless the reference to the signature has some unexplained but profound significance, the sentence about the award adds nothing to the one about the offer --- both sentences require an interpretation of exactly *what* was being confirmed. But the decision does not explain why "confirmation that the [socio-economic] status shown [or provided in the quotation] is the same as that identified in the applicable GSA schedule," Pl.'s Ex. J at 8; Def.'s App. at A27, should be taken to mean "confirmation that your current size is the same as shown on the GSA schedule" as opposed to "confirmation that your status on the GSA schedule is what you assert in the offer." That, however, is the key question.[5]

Moreover, the Area Office decision also highlights the notice that the TORFQ was "a total set-aside for small business concerns," noting similar language in a solicitation concerning which "OHA had ascertained that the CO had required a certification as a small business." Pl.'s Ex. J at 8-9; Def.'s App. at A27-28. But the small business set-aside language was not the reason a certification request was found in that other matter, and the solicitation under consideration there expressly stated that offerors "shall *certify their current business size status* as it applies to the GSA Schedule under which the quote is being submitted." *Size Appeal of: Prof'l Project Servs., Inc.*, SBA No. SIZ-5411, Oct. 26, 2012, 2012 WL 5363621, at *1 (emphasis added). The mere fact that a task order was set aside for small businesses does nothing to answer the relevant question: As of what date must small business status be determined?

All told, it is hard for the Court to handicap the plaintiff's likelihood of success on the merits. The correctness of the Area Office decision may well turn on such issues as whether "certification" and "status" have specialized meanings that have not yet been shared with the Court. But given the agency's stated policy, the seeming ambiguity of the TORFQ language, the action of the contracting officer in

---

Small Business Administration (SBA)," Pl.'s Ex. J at 8; Def.'s App. at A27 --- sheds no light on what is being confirmed, and instead merely references the relevant size standard.

[5] The Court notes that it seems more likely that a deadline for recertifying would arise between the date of offer and award than that a business would grow out of its size status during that same period, so concern about the former better explains the use of both dates in the TORFQ.

making the initial award, and the opaque reasoning of the decision under review, the Court concludes that plaintiff's likelihood of success is at least sufficient to make it eligible for the injunctive relief it seeks. The Court will thus consider the other three injunctive relief factors. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

Clearly, the plaintiff has proven it would suffer irreparable injury if the agency were not enjoined and the task order were awarded to another offeror. Under the FAR, an OHA decision "received after award shall not apply to that acquisition." 48 C.F.R. § 19.302(i) (2012). Thus were Metters, the "apparent awardee," Pl.'s Ex. H at 1; Def's App. at A15, to prevail before OHA, it would still lose the task order award, valued at more than $13 million annually, *see* Def.'s Opp'n at 3, for which it had been selected. It is well-established that the profits lost by an offeror because of the government's arbitrary or unlawful rejection of an offer constitute irreparable injury for purposes of injunctive relief. *See MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 552 (2011).

The third factor to be considered is whether "the balance of hardships tips in the movant's favor." *FMC Corp.*, 3 F.3d at 427. The incumbent contractor is now performing most of the task order's work under a bridge contract that runs through March 16, 2013. *See* Def.'s Opp'n at 19-20. At the hearing on the plaintiff's motion, agency counsel explained that some training services will not be received until the task order issues. He also represented that the agency does not know whether the incumbent could continue to perform the work after the current bridge contract expires, but has no reason to believe the incumbent could not. The agency also does not know if work being performed costs more under the bridge contract than it would under the task order. The one "severe hardship" alleged by the government is that the task order would be paid with Fiscal Year 2012 funds, while any bridge contracts would be paid with Fiscal Year 2013 funds --- the latter of which are "limited" and subject to "the uncertainty surrounding the Federal budget situation." *Id.* at 20. But the party in this case is the United States, not AMCOM. If funding is limited due to the budget choices and priorities of the Congress and the Executive, this is not a *hardship* to the United States but rather the *policy* of the United States. *Cf. PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003) (explaining, in the context of a stay override, that in determining the best interests of United States, legislative acts rank higher than the interests of an agency). As there is no reason to believe the work at issue cannot be performed under a bridge contract beyond March 16, the Court concludes that the balance of hardships favors the plaintiff.

The fourth factor to be considered is whether a preliminary injunction "will not be contrary to the public interest." *FMC Corp.*, 3 F.3d at 427. The government

argues that the public interest is not served by assisting a company which is no longer small to obtain a small business task order. Def.'s Opp'n at 20-21. But taking into account that the plaintiff was the "apparent awardee" selected by the agency, Pl.'s Ex. H at 1; Def's App. at A15, the Court concludes that it would be in the public interest to allow OHA the opportunity to apply the SBA's own regulations, interpret the TORFQ, and determine if an award to Metters is consistent with its small business policies.

Taking all four injunctive relief factors into account, the Court is persuaded that Metters has established its right to a preliminary injunction of a limited duration. Because the task order would include training services that are not currently being performed under any other vehicle, the Court is reluctant at this time to extend the injunction beyond sixty days. As no monetary harm to the United States has been shown to be associated with the injunction, the Court determines, pursuant to Rule 65(c) of the Rules of the United States Court of Federal Claims ("RCFC"), that the proper amount of security in this case is $0.00.

It is thereby **ORDERED** by the Court, pursuant to RCFC 65, that defendant United States of America, the Department of the Army, the U.S. Army Aviation and Missile Command, the General Services Administration, and their officers, agents, employees, and representatives, and all persons acting in concert and participating with them respecting the subject procurement, are hereby RESTRAINED AND ENJOINED from awarding any contracts pursuant to Task Order Request for Quotation 2012L-5, prior to the earlier of: 1) the issuance of a decision by SBA OHA on the plaintiff's appeal of Size Determination 2-2013-21; or 2) April 23, 2013.

The parties shall file a Joint Status Report on or by **March 25, 2013**, informing the Court of the status of the OHA proceedings.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge