IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | |
|---|---|
| METTERS INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13-116C |
| ) | (Judge Wolski) |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## STIPULATION OF DISMISSAL

As the U.S. Small Business Administration's Office of Hearings and Appeals has issued its decision denying Plaintiff Metters Industries, Inc.'s appeal (attached to this Stipulation as Exhibit A), pursuant to Rule 41(a)(1)(A)(ii) of the Court of Federal Claims, Plaintiff hereby dismisses this action, by stipulation of the parties, with each party to bear its own costs, expenses, and attorneys' fees.

Dated: April 10, 2013

Respectfully submitted,

s/Pamela J. Mazza
Pamela J. Mazza
PilieroMazza, PLLC
888 17th Street, NW, 11th Floor
Washington, DC 20006
(202) 857-1000 (phone)
(202) 857-7836 (protected fax)
pmazza@pilieromazza.com

*Counsel for Metters Industries, Inc.*

Of Counsel:

Isaias "Cy" Alba, IV
Patrick T. Rothwell
Kathryn V. Flood
Brian F. Wilbourn
Grant D.P. Madden
PilieroMazza, PLLC
888 17th Street, NW, 11th Floor
Washington, DC  20006
(202) 857-1000 (phone)
(202) 857-7836 (protected fax)
ialba@pilieromazza.com
prothwell@pilieromazza.com
kflood@pilieromazza.com
bwilbourn@pilieromazza.com
gmadden@pilieromazza.com


STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

Michael Kraycinovich
Associate Command Counsel
U.S. Army Materiel Command
Redstone Arsenal, AL 35898

Captain Tudo Pham
Trial Attorney
Contract and Fiscal Law Division
U.S. Army Legal Services Agency
Fort Belvoir, VA 22060

s/Scott R. Damelin
SCOTT R. DAMELIN
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 305-2312
Fax: (202) 305-7643
E-mail: scott.damelin@usdoj.gov

*Counsel for Defendant United States*

# CERTIFICATE OF FILING

I hereby certify that the foregoing Stipulation of Dismissal was electronically filed on this 10th day of April, 2013. I understand that notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System.

                                                s/Pamela J. Mazza
                                                Pamela J. Mazza

# Exhibit A

REDACTED DECISION FOR PUBLIC RELEASE

# United States Small Business Administration
# Office of Hearings and Appeals

SIZE APPEAL OF:

Metters Industries, Inc.

    Appellant

Size Determination No. 2-2013-21

SBA No. SIZ-5456

Decided: March 26, 2013

APPEARANCES

Pamela J. Mazza, Esq., Isaias "Cy" Alba, IV, Esq., Kathryn V. Flood, Esq., and Brian F. Wilbourn, Esq., PilieroMazza PLLC, Washington, D.C., for Metters Industries, Inc.

DECISION[1]

## I. Introduction and Jurisdiction

This appeal arises from a size determination concluding that Metters Industries, Inc. (Appellant) is not an eligible small business for a task order issued under a multiple-award blanket purchase agreement (BPA) arrangement. Appellant's size was protested by the procuring agency's Contracting Officer (CO) after the firm originally selected for award was found to be ineligible in a separate size determination. Appellant concedes that it is not presently a small business. Appellant maintains, however, that the CO lacked authority to challenge Appellant's size because the underlying Task Order Request for Quotations (TORFQ) did not explicitly require offerors to recertify themselves as small businesses. For the reasons discussed *infra*, the appeal is denied.

The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) decides size determination appeals under the Small Business Act of 1958, 15 U.S.C. § 631 *et seq.*, and 13 C.F.R. parts 121 and 134. Appellant filed the instant appeal within fifteen days of receiving the size determination, so the appeal is timely. 13 C.F.R. § 134.304(a). Accordingly, this matter is properly before OHA for decision.

---

[1] Appellant requested confidential treatment of this appeal. *See* 13 C.F.R. § 134.205. After reviewing the original decision, Appellant proposed various redactions to protect its confidential information. Having considered these suggestions, I now issue this redacted decision for public release.

II. Background

A. TORFQ, Size Determination No. 3-2013-15, and Protest

On August 3, 2012, the U.S. Army Contracting Command (Army) issued TORFQ No. 2012L-5 seeking a contractor to perform logistics support services at Redstone Arsenal, Alabama. The TORFQ was issued to firms holding BPAs under the Army Aviation and Missile Command (AMCOM) Expedited Professional and Engineering Support Services (EXPRESS) contracting vehicle. The EXPRESS BPAs in turn were established through the U.S. General Services Administration Federal Supply Schedules (GSA Schedules).[2] The CO set aside the task order exclusively for small businesses, and incorporated FAR clause 52.219-6, Notice of Total Small Business Set-Aside (Nov 2011). The TORFQ stated that **"Only quotes submitted by small business concerns will be accepted by the Government. Any quote that is submitted by a contractor that is not a small business concern will not be considered for award."** (TORFQ at 1, emphasis in original.)

The TORFQ instructed offerors to represent their small business status in their proposals, as follows:

> **Please be advised that the quotation contents require you to provide the socio-economic status for yourself and each subcontractor/team member utilized in this quotation. Your submission of this information serves as confirmation that the status shown is the same as that identified in the applicable GSA schedule, subject to the [North American Industry Classification System (NAICS)] applicability defined in the BPA and the current associated size standards established by [SBA], as of the date of your task order quotation submission. Further, should you be selected as the successful offeror, your signature on the task order award serves as confirmation that the socio-economic status provided in the quotation is the same as that identified in the applicable GSA schedule, subject to the NAICS applicability defined in the BPA and the current associated size standards established by [SBA], as of the date of your signature on the task order award.**

(*Id.*, emphasis in original.) Proposals were due August 23, 2012.

Five offerors, including Appellant, submitted proposals in response to the TORFQ. At least two of those offerors – Appellant and Logistic Management Institute Consulting, Inc. (LMI) – did not certify themselves as small businesses in their proposals. The Army evaluated proposals and selected LMI for award on September 27, 2012. A task order was issued to LMI that same day. Appellant then filed a size protest disputing LMI's size. Appellant's protest

---

[2] *See generally* Federal Acquisition Regulation (FAR) subpart 8.4.

asserted that, as a result of a recent corporate merger, LMI was required to recertify its size status pursuant to 13 C.F.R. § 121.404(g)(2).

On October 26, 2012, SBA's Office of Government Contracting, Area III (Area Office III) issued Size Determination No. 3-2013-15 concluding that LMI is not a small business. Area Office III found that LMI was required to recertify because "[t]he [CO] explicitly required [offerors] to recertify their size status in response to the TORFQ." (Size Determination No. 3-2013-15 at 4, citing 13 C.F.R. § 121.404(g)(3)(v).) LMI acknowledged that it did not recertify, and that LMI did not qualify as a small business as of the date of its task order proposal. As a result, LMI was ineligible for the task order. Size Determination No. 3-2013-15 was not appealed to OHA, either by LMI or by Appellant.

On November 1, 2012, Appellant wrote to SBA's Office of General Counsel to request reopening of Size Determination No. 3-2013-15. Appellant explained that it agreed with the result, but not the rationale, of the determination. In Appellant's view, Area Office III should have found that LMI was required to recertify as a result of the corporate merger, 13 C.F.R. § 121.404(g)(2), and not because of language in the TORFQ itself, 13 C.F.R. § 121.404(g)(3). Appellant asserted that the TORFQ did not instruct offerors to recertify their size for the task order, but instead "merely require[d] that offerors 'confirm' that they are still small on their underlying GSA Schedule contracts." (Letter at 3.) Appellant warned that "[i]f left unrectified, [Size Determination No. 3-2013-15] will have serious consequences for this procurement." (*Id.* at 1.) SBA did not respond to Appellant's request, and Size Determination No. 3-2013-15 was not reopened.

The CO "agreed" with, and "adopted," Size Determination No. 3-2013-15, and terminated the task order award to LMI. (CO's Protest at 4.) The Army then selected Appellant as the apparent awardee of the task order. (*Id.*) On November 2, 2012, the CO wrote Appellant to:

> request your company certify its size status **only for this task order** under NAICS Code 561210, with a size standard of $35.5 Million, as of August 23, 2012, or the date on which your company submitted its quote in response to TORFQ 2012L-5, irrespective of what your company's size status is under the [GSA Schedule contract]. Certification of your size status will also be required at the time of award should your company be the successful offeror.

(CO's Letter at 1, emphasis in original.) The CO characterized his request as "consistent with the instruction in the [TORFQ] issued on August 3, 2012." (*Id.*)

By letter of November 5, 2012, Appellant responded to the CO's request. Appellant maintained that, as a matter of policy, the Army does not require recertification at the task order level for the EXPRESS BPAs, but instead encourages COs to rely on the small business representations at the Schedule level. Further, in Appellant's view, the instant TORFQ did not require recertification. Appellant explained that it currently exceeds the $35.5 million size

standard, and could not represent itself as being a small business as the date of its task order proposal. As a result, "if [Appellant] was to submit a quotation based on your [November 2 letter], [Appellant] would be other than small."

On November 9, 2012, the CO protested Appellant's size. The CO stated that Appellant had not complied with "my instruction for recertification in the task order request for quotation." (CO's Protest at 1.) The CO further noted that Area Office III had found, in Size Determination No. 3-2013-15, that the TORFQ required recertification at the task order level, "a decision with which I agreed and adopted." (*Id.* at 4.) The CO explained that he had again requested that Appellant recertify in his letter of November 2, 2012, and that Appellant's response – which the CO labeled Appellant's "Non-Certification" – was not satisfactory. The CO reiterated that he was protesting Appellant's size "[b]ased on my instruction for recertification in the TORFQ." (*Id.*)

On November 29, 2012, Appellant responded to the CO's protest and submitted its completed Form 355, tax returns for the years 2006 – 2008, and other documents. Appellant argued that SBA should determine Appellant's size as of March 30, 2009, when Appellant last updated its GSA Schedule contract. (Protest Response at 2.)

B. Size Determination No. 2-2013-21

On January 25, 2013, SBA's Office of Government Contracting, Area II (Area Office II) issued Size Determination No. 2-2013-21 finding that Appellant is not an eligible small business for the instant task order.

Area Office II began by explaining that the case turns upon whether the TORFQ required recertification at the task order level. If so, the CO could properly have protested Appellant's size pursuant to 13 C.F.R. § 121.1004(a)(3)(iii). Area Office II emphasized that it was not basing its decision on Appellant's failure to comply with the CO's November 2, 2012 letter, because this occurred well after offerors had already submitted their task order proposals. (Size Determination No. 2-2013-21, at 4.)

Area Office II noted that the Army had issued policy guidance – a set of questions and answers (Q&A) from an August 2012 "town hall" meeting, and a letter from an Army contracting officer to EXPRESS BPA holders dated May 26, 2010 – indicating that recertification ordinarily is not required for individual task orders under the EXPRESS BPAs. (*Id.* at 3-4.) The Q&A document, however, was "informational in scope," did not pertain specifically to the instant task order, and was never incorporated into the TORFQ. (*Id.* at 4-5.) The May 2010 letter likewise did not pertain to any specific task order, and contained the caveat that the policy could be superseded by contrary instructions provided in a task order solicitation. (*Id.* at 7.)

Area Office II next addressed whether the TORFQ contained an "explicit" request for recertification, and determined that it did. (*Id.* at 8.) The TORFQ repeatedly stated that only small businesses were eligible to submit proposals. Further, the TORFQ instructed offerors to

verify size "as of the date of your task order quotation submission" and again "as of the date of your signature on the task order award." (*Id.* at 6.) Area Office II found that the set-aside provisions, combined with "the explicit language used by the CO la[t]er in the subject TORFQ reinforces the fact that the subject TORFQ required a recertification of its size for all offerors." (*Id.* at 7.) In addition, Area Office II considered the language of the TORFQ to be similar to that at issue in *Size Appeal of Professional Project Services, Inc.*, SBA No. SIZ-5411 (2012), a case where OHA found that a procuring agency had requested certification. (*Id.*)

Area Office II concluded that Appellant's size must be measured as of August 23, 2012, the date that Appellant submitted its proposal in response to the TORFQ. Appellant conceded that it did not qualify as a small business as of August 23, 2012. Furthermore, Appellant did not provide its receipts for any of the three years (2009 – 2011) that would be reviewed if size were measured as of August 23, 2012. Accordingly, Appellant is not an eligible small business for the instant task order.

C. The Appeal

On February 11, 2013, Appellant filed its appeal of Size Determination No. 2-2013-21 with OHA. Appellant maintains that the size determination is arbitrary and capricious, contains significant errors of fact and law, and should be reversed. (Appeal at 24-25.) Specifically, Appellant complains that (1) the TORFQ did not "explicitly" require offerors to recertify their size status at the task order level, and (2) the CO's November 2, 2012 letter was improper, because the CO had no authority to demand recertification after offerors had already submitted their responses to the TORFQ. (*Id.* at 8.)

Appellant observes that, under 13 C.F.R. § 121.404(g), "[a] concern that qualified as a small business at the time it receives a contract is considered a small business throughout the life of that contract." Here, there is no dispute that Appellant was a small business at the time it was awarded its GSA Schedule contract. (*Id.*) Thus, Appellant reasons, unless required to recertify its size, Appellant should remain an eligible small business for any task orders issued under the Schedule contract. (*Id.* at 9.)

Appellant acknowledges that a procuring agency may request recertification for a specific task order, but maintains that SBA regulations require that any such request be "explicit." (*Id.* citing 13 C.F.R. § 121.404(g)(3)(v).) In this case, Appellant insists, the CO did not "explicitly" request recertification because the operative language of the TORFQ is "susceptible to multiple interpretations, or, at the very least, is confusing and unclear." (*Id.* at 10.) "Indeed, in reading these [TORFQ] provisions, it is difficult to determine what they require at all." (*Id.* at 17.) Appellant asserts that it understood the TORFQ as merely requiring offerors to confirm "that they were still qualified as small on their underlying GSA Schedule contracts as of the date of proposal submission." (*Id.* at 4, 20.) Appellant maintains that "had [Appellant] been advised at the outset that such recertification as of the date of proposal submission was required, [Appellant's] proposal strategy would have been different and it would not have submitted an offer as the prime contractor." (*Id.* at 24.)

Appellant highlights that the TORFQ did not contain the words "certify" or "recertify". (*Id.* at 4, 18.) Further, at least two of the five offerors (LMI and Appellant) interpreted the operative language as not requiring recertification. (*Id.* at 10, 15.) More importantly, in Appellant's view, the CO himself did not believe the TORFQ imposed a requirement to recertify. Appellant observes that the CO was prepared to award the instant task order to LMI or to Appellant, although neither firm had recertified. (*Id.* at 10.) Appellant also points to the CO's November 2, 2012 letter as evidence that recertification was not required by the TORFQ. "[I]f the original TORFQ explicitly required certification, this belated (and improper) request that [Appellant] recertify [its] size would be completely redundant as recertification would already have been required by the language of the TORFQ itself." (*Id.* at 12.) Thus, Appellant contends, "the very existence of the November request evinces that the TORFQ did not explicitly require offerors to recertify." (*Id.*, emphasis in original.)

Appellant asserts that Army policy guidance likewise supports the conclusion that the TORFQ did not require recertification. Appellant maintains that Area Office II misinterpreted, or failed to give sufficient weight to, the August 2012 Q&As and the May 2010 letter. The Q&A document was issued only seven days after the subject TORFQ, and therefore is contemporaneous evidence of the Army's practice. (*Id.* at 13.) Appellant further argues that the May 2010 letter established a blanket policy that recertification is not required for task orders under the EXPRESS BPAs, and that the letter contemplated an exception only for task order requests which were outstanding as of May 2010. (*Id.* at 14-15.)

Appellant observes that the TORFQ indicated that size would be verified as of the date of proposal submission and again as of the date of award. However, Appellant maintains, "contracting officers have no authority whatsoever to require certification at the time of award." (*Id.* at 18.) Thus, in Appellant's view, it is more reasonable to conclude that the TORFQ imposed no recertification requirement at all. (*Id.* at 19.)

Appellant attacks the reasoning of Area Office II in Size Determination No. 2-2013-21. Appellant asserts that its own interpretation of the TORFQ is plausible, and that "[w]hile the Area Office disagreed with [Appellant's] interpretation of the language of the TORFQ and concluded that it required recertification, such disagreement only provides further evidence that the TORFQ is open to interpretation and therefore, not 'explicit.'" (*Id.* at 20.) Appellant maintains that the Area Office's reliance on *Size Appeal of Professional Project Services, Inc.*, SBA No. SIZ-5411 (2012) is misplaced, because the solicitation in that case was much different than the subject TORFQ, and OHA did not address the issue of whether there had been an explicit recertification request. (*Id.* at 20-21.) Furthermore, contrary to the size determination, the mere fact that the instant task order was set aside for small businesses does not demonstrate that recertification was required. (*Id.* at 19-20.)

Lastly, Appellant requests that OHA find that the CO's November 2, 2012 demand for recertification was improper. Appellant maintains that, under 13 C.F.R. § 121.404(g)(3)(v), recertification may be requested only in response to a solicitation for an order, and that contracting officers are not permitted "to require that offerors recertify their size status at any

other time, including <u>after</u> they have already submitted their response to the solicitation for an order." (*Id.* at 22-23, emphasis in original.)

### D. Appellant's Motion to Supplement the Record

Accompanying its appeal petition, Appellant moved to admit new evidence. Specifically, Appellant seeks to introduce (1) a declaration from [XXX], purporting to describe a telephone conversation with the CO on September 27, 2012; and (2) a set of "Industry Day" slides from January 2013 pertaining to the EXPRESS BPAs. According to Appellant, [XXX]'s declaration "establishes that [the CO] was actively aware that the initial successful offeror, [LMI], was not a small business, but that [the CO] elected to issue the award to [LMI] anyway." (Motion at 2.) Appellant maintains that the slides demonstrate that it has been the Army's practice not to require recertification for individual task orders under the EXPRESS BPAs. (*Id.* at 3.) Appellant asserts that the new evidence is relevant to the issues on appeal, does not enlarge the issues, and clarifies the relevant facts. Therefore, OHA should admit it. Appellant offers no explanation why [XXX]'s declaration was not presented to Area Office II during the size review.

### E. Army's Filing

On February 27, 2013, the date of the close of record, the Army provided OHA a copy of the TORFQ, and stated that there were no amendments. The Army did not respond to the merits of the appeal.

### F. Preliminary Injunction

Appellant sought, and obtained, a preliminary injunction from the U.S. Court of Federal Claims to prevent the Army from awarding the instant task order to a different offeror during the pendency of this appeal. *Metters Industries, Inc. v. U.S.*, --- Fed. Cl. ----, 2013 WL 751304 (2013). The Court found that Appellant had a reasonable possibility of success on the merits, "given the [Army's] stated policy, the seeming ambiguity of the TORFQ language, the action of the [CO] in making the initial award, and the opaque reasoning of [Size Determination No. 2-2013-21]." *Id.* at *3.

## III. Discussion

### A. Standard of Review

Appellant has the burden of proving, by a preponderance of the evidence, all elements of the appeal. Specifically, Appellant must prove the size determination is based upon a clear error of fact or law. 13 C.F.R. § 134.314. OHA will disturb an area office's size determination only if, after reviewing the record, the administrative judge has a definite and firm conviction that the area office erred in making its key findings of fact or law. *Size Appeal of Taylor Consultants, Inc.*, SBA No. SIZ-4775, at 11 (2006).

## B. New Evidence

OHA's review is based upon the evidence in the record at the time the area office made its determination. As a result, evidence that was not previously presented to the area office is generally not admissible and will not be considered by OHA. *E.g., Size Appeal of Maximum Demolition, Inc.*, SBA No. SIZ-5073, at 2 (2009) ("I cannot find error with the Area Office based on documents the Area Office was unable to review."). New evidence may be admitted on appeal at the discretion of the administrative judge if "[a] motion is filed and served establishing good cause for the submission of such evidence." 13 C.F.R. § 134.308(a). The proponent must demonstrate, however, that "the new evidence is relevant to the issues on appeal, does not unduly enlarge the issues, and clarifies the facts on the issues on appeal." *Size Appeal of Vista Eng'g Techs., LLC*, SBA No. SIZ-5041, at 4 (2009).

In this case, I find that Appellant has not shown good cause to admit the new evidence. Appellant seeks to introduce (1) [XXX]'s declaration, purporting to describe a telephone conversation with the CO on September 27, 2012; and (2) briefing slides from a January 2013 "Industry Day" providing an overview of the EXPRESS BPAs. [XXX]'s declaration, however, is unsubstantiated hearsay, and therefore has limited probative value. Moreover, the declaration pertains to an event which is alleged to have occurred well before the CO protested Appellant's size on November 9, 2012. Accordingly, if Appellant wished to have [XXX]'s declaration considered, Appellant could, and should, have produced it to Area Office II during the size review. *Size Appeal of Professional Project Services, Inc.*, SBA No. SIZ-5411, at 7 (2012) ("OHA has repeatedly declined to accept new evidence when the proponent did not first submit the material to the Area Office during the size review."); *Size Appeal of BR Constr., LLC*, SBA No. SIZ-5303, at 7 (2011) (denying motion to admit new exhibit, which "sets forth factual information that could have been communicated to the Area Office"). Meanwhile, the "Industry Day" slides do not address any specific task order, and shed no light on whether recertification was required in the instant case. Even assuming, as Appellant contends, that the Army ordinarily does not require recertification for individual orders under the EXPRESS BPAs, the Army might – either intentionally or unintentionally – have deviated from its standard practice in this particular case. *E.g., LB&B Associates Inc. v. U.S.*, 68 Fed. Cl. 765, 772 (2005) (recognizing that procuring agencies have discretion to require recertification at the task order level "to ensure that small business set-aside contracts are awarded to an actual small business."). For these reasons, Appellant's motion is DENIED, and the new evidence is NOT ADMITTED to the record.

## C. Analysis

The principal issue presented in this case is whether the TORFQ required offerors to recertify their size for the instant task order. Appellant acknowledges that it did not recertify, and cannot do so retroactively because Appellant is no longer a small business under the applicable size standard. Thus, if the TORFQ required recertification, Appellant is not an eligible small business for this task order. Two different SBA area offices reviewed the TORFQ and determined that the TORFQ did require recertification. The Army's CO likewise took that position in his protest of Appellant's size. Appellant, on the other hand, asserts that the TORFQ

merely required that an offeror be identified as small on its underlying GSA Schedule contract, irrespective of whether the offeror remained a small business at the time of the task order competition.

Having reviewed the record and the arguments of the parties, I agree with the SBA area offices that the TORFQ is properly understood as requiring recertification at the task order level. The TORFQ instructed each offeror to specify its size status in its task order proposal, and to verify whether its size "as of the date of your task order quotation submission" is the "same as" the offeror's underlying GSA Schedule. If selected for award, the offeror was required to again confirm its size "as of the date of your signature on the task order award." Further, the Army requested these representations in conjunction with a total small business set-aside, after repeatedly warning that proposals would be accepted only from small businesses. Thus, read in its entirety, the TORFQ appears to be asking each offeror to verify, in writing, that it was a small business on its GSA Schedule contract, and that the offeror was still a small business at time of task order proposal submission and task order award. Such a statement is equivalent in substance to a certification, notwithstanding that the Army did not utilize the words "certify" or "recertify" in the TORFQ. *E.g.*, 15 U.S.C. § 632(w)(3) (indicating that "certification" generally consists of a representation by an authorized representative that "a business concern qualifies as a small business concern of the exact size and status claimed by the business concern for purposes of bidding on a Federal contract or subcontract"); 71 Fed. Reg. 66,434, 66,438 (Nov. 15, 2006) (observing that certification "occurs when an offeror represents that it is small as part of its offer or by submitting an offer," and that "certification" is essentially synonymous with "representation" of small business status).

By contrast, Appellant's interpretation of the TORFQ is strained and difficult to reconcile with the actual language of the document. The TORFQ instructed each offeror to "provide [its] socio-economic status…in [its] quotation," and twice stated that "current associated size standards" would govern. If the TORFQ had been inquiring about offerors' size at the Schedule level, though, the reference to "current" size standards would be meaningless, as offerors would already have represented their size on their Schedule contracts using the size standards prevailing at that time.[3] Rather, the use of current size standards is indicative of a recertification request. *See* 13 C.F.R. § 121.404(g)(3)(iii) ("A request for a size re-certification shall include the size standard in effect at the time of re-certification…."). Accordingly, the fact that the TORFQ stated that size would be governed by "current" size standards is strong evidence that the TORFQ was seeking recertification of size for the instant order, and not referring to the offeror's size as previously represented in its GSA Schedule contract. Further, after instructing each offeror to "provide [its] socio-economic status," the Army then inquired whether the offeror's size "is the same as that identified in the applicable GSA schedule." This phrasing suggests that when the Army instructed the offeror to "provide [its] socio-economic status," the Army was not referring to the Schedule-level representations. Similarly, the Army asked each offeror to represent not just the size of the offeror itself, but also the size of "each subcontractor/team

---

[3] Appellant asserts, for example, that it represented itself as a small business for its Schedule contract in March 2009, when its Schedule contract was last updated. *See* Section II.A, *supra*.

member." Under the EXPRESS BPAs, though, a subcontractor will not necessarily have its own GSA Schedule contract.[4] Again, then, it appears that the Army was not simply inquiring about size at the Schedule level. Appellant's interpretation of the TORFQ also fails to explain the elaborate choice of words utilized in the TORFQ. Stated differently, if Appellant's interpretation of the TORFQ were correct, the Army could have chosen much more direct language to solicit the desired information. The Army might, for example, simply have instructed offerors to state whether the offeror is identified as a small business on its Schedule contract. Indeed, the Army presumably would already have known whether the EXPRESS BPA holders were identified as small businesses on their Schedule contracts, or could easily retrieve that information for itself via GSA's website. Thus, if Appellant's interpretation were correct, it is not apparent why the Army would have addressed the issue at all in the TORFQ. The fact that the Army instead chose to include an entire paragraph of instructions, distinguishing between Schedule-level representations and size "as of the date of your task order quotation," reinforces the conclusion that the Army was asking offerors to recertify for the task order, not merely to state whether the prime contractor is identified as small on its GSA Schedule.

Appellant maintains that, insofar as the TORFQ did seek recertification, that request was not "explicit" within the meaning of 13 C.F.R. § 121.404(g)(3)(v), which stipulates that "[w]here the contracting officer explicitly requires concerns to recertify their size status in response to a solicitation for an order, SBA will determine size as of the date the concern submit its self-representation as part of its response to the solicitation for the order." Appellant reasons that the TORFQ was too vague and convoluted to be considered an "explicit" request. As discussed above, however, when read in context, the TORFQ is reasonably understood as a request to recertify at the task order level. Moreover, that request was "explicit", at least in the sense that the TORFQ did not rely on the "implied" request for certification that might be said to arise whenever an agency chooses to restrict a procurement to small businesses. *See, e.g., Size Appeals of Safety and Ecology Corp.*, SBA No. SIZ-5177, at 21 (2010) (rejecting contention that "merely setting [a] task order aside for small businesses is a request for recertification"). The regulatory history of 13 C.F.R. § 121.404(g)(3)(v) is silent as to what the drafters of the regulation envisioned by an "explicit" request for recertification. Nevertheless, SBA's commentary accompanying the final rule makes plain that SBA's primary concern was to ensure that "procurements meant for small businesses should be awarded to small businesses." 71 Fed. Reg. 66,434, 66,438 (Nov. 15, 2006). In light of this objective, the drafters likely would not have intended that a task order set aside for small businesses should be awarded to a firm that is currently large, merely because the recertification request may have been drafted with less than perfect clarity.

To support its view that the TORFQ did not require recertification, Appellant points to Army policy guidance – a set of questions and answers (Q&A) from an August 2012 "town hall" meeting, and a letter from an Army contracting officer to EXPRESS BPA holders dated May 26, 2010 – indicating that recertification typically is not required for task orders issued under the EXPRESS BPAs. As Area Office II correctly found, however, these policy statements do not directly pertain to this (or any other specific) task order, and were never incorporated into the

---

[4] *See generally* Q&As # 50 and # 79, located at Tab L of Appellant's protest response.

subject TORFQ. Both documents are in the nature of broad policy statements, and it is not clear that either document was issued by persons with authority to establish policy for the EXPRESS BPAs, or for the Army generally. Nor is it apparent that the CO in this case would have been aware of the policy statements at the time he issued the subject TORFQ. The Q&A document was prepared only after the TORFQ had already been issued, and the May 2010 letter was signed by a different CO than the one who issued the TORFQ, and was addressed to EXPRESS BPA holders, not to Army personnel. In short, then, Army policy guidance does not establish that recertification was not, or could not have been, required for this particular TORFQ.

Appellant also highlights certain actions by the CO as evidence that he did not subjectively intend to require recertification. Appellant emphasizes that the CO apparently was willing to award instant task order to LMI and to Appellant, although neither firm had recertified in its task order proposal. Further, after LMI was found to be ineligible for award by Size Determination No. 3-2013-15, the CO, in his letter of November 2, 2012, requested that Appellant recertify for the task order. Appellant insists that this request would have been redundant if recertification were already required by the TORFQ.

I find these actions by the CO are not conclusive as to whether he intended to request recertification. In bid protest decisions, the U.S. Government Accountability Office (GAO) has recognized that the omission of a small business certification is not necessarily an incurable defect in a proposal. *E.g., Insinger Mach. Co.*, B-234622, Mar. 15, 1989, 89-1 CPD ¶ 277 (failure to complete small business certification was a correctable defect which did not render bid nonresponsive). Thus, the fact that the CO requested Appellant to remedy a missing certification, or that he anticipated that award could still be possible notwithstanding the defect, do not establish that he believed no recertification was required in the first instance. Rather, the CO may have been operating under the assumption that the missing certification was a clerical or administrative oversight which might later be rectified by the offeror. Moreover, there are other actions by the CO which strongly indicate that he did believe recertification was required by the TORFQ. In particular, the CO "adopted" Size Determination No. 3-2013-15, in which Area Office III found that the TORFQ required recertification; took the unusual step of initiating his own size protest against Appellant, twice stating in his protest that the TORFQ required recertification; and, upon receipt of Size Determination No. 3-2013-15, did not attempt to amend or reissue the TORFQ, so as to revise or retract the recertification language. (*See* Sections II.A and II.E, *supra*.) It is possible that the CO inadvertently included the recertification provision in the TORFQ, or that he issued the TORFQ without fully appreciating the import of the recertification language. Nevertheless, it appears unlikely that the CO would have proceeded as he did if he did not ultimately agree with SBA that the TORFQ required recertification.[5]

---

[5] While not fatal to the appeal, I note that Appellant too can be faulted for conduct inconsistent with its current litigation posture. For instance, Appellant was strongly critical of Size Determination No. 3-2013-15, warning of dire consequences to the acquisition if the determination were not rescinded, but elected not to pursue an appeal, thereby allowing the determination to become final. 13 C.F.R. § 121.1009(h). Similarly, Appellant now argues on appeal that it would not have submitted a proposal if it had understood that the TORFQ required recertification, yet also asserts that the TORFQ's provisions are so unclear that "it is difficult to

Appellant also contends that SBA regulations permit a CO to request recertification only at the time of task order proposal submission. The TORFQ here, though, referred to size verification both at the time of task order proposal submission and at the time of award. Thus, Appellant reasons, the TORFQ cannot be interpreted as requesting recertification. (Appeal at 19.) I see no merit to this argument. Appellant itself acknowledges that the CO's letter of November 2, 2012 was a request for recertification (*Id.* at 23), and that letter also refers to recertification both at proposal submission and at award. Thus, the reference to two different dates does not establish that the TORFQ contained no request for recertification.

Appellant lastly argues that the CO's November 2 letter should be declared invalid, because the CO could not properly demand recertification after task order proposals had already been submitted. I find it unnecessary to decide this issue. The CO's letter was sent after Area Office III issued Size Determination No. 3-2013-15 concluding that the TORFQ required recertification. Further, Size Determination No. 2-2013-21 expressly stated that Area Office II was basing its decision on the language of the TORFQ itself, and not on CO's November 2 letter. (Size Determination No. 2-2013-21, at 4.) It is thus apparent that the CO's November 2 letter was not the basis for either size determination.

IV. Conclusion

The dispositive issue in this case is whether TORFQ required recertification at the task order level. After parsing the wording of the TORFQ, two different area offices concluded that the TORFQ did require recertification. Appellant bears the burden of proof in this proceeding, and has not established that the determinations are clearly erroneous. Accordingly, the appeal must be denied. This is the final decision of the Small Business Administration. 13 C.F.R. § 134.316(d).

KENNETH M. HYDE
Administrative Judge

---

determine what they require at all." (Appeal at 17, 24.) Appellant does not explain why, if Appellant harbored such uncertainty as to the meaning of a key solicitation provision, Appellant did not seek clarification from the CO prior to submitting a proposal. Generally, an objection to the terms of a solicitation is waived unless raised prior to the deadline for receipt of proposals. *E.g., ABF Freight System, Inc. v. U.S.*, 55 Fed. Cl. 392 (2003).

CERTIFICATE OF SERVICE

    I hereby certify that, on April 4, 2013, I served the foregoing, by electronic mail, upon the following:

Pamela J. Mazza, Esq.
Isaias "Cy" Alba, IV, Esq.
Kathryn V. Flood, Esq.
Brian F. Wilbourn, Esq.
Piliero Mazza PLLC
Counsel for Metters Industries, Inc.
888 17th St., NW, 11th Floor
Washington, DC 20006
Email: pmazza@pilieromazza.com
Email: ialba@pilieromazza.com
Email: kflood@pilieromazza.com
Email: bwilbourn@pilieromazza.com

William D. Greene, Contracting Officer
Rafael A. Rosado-Marrero, Esq., Attorney-Advisor
U.S. Department of the Army
Army Contracting Command – Redstone
Building 5303 Martin Road, 2nd Floor
Attn: CCAM-EX-L
Redstone Arsenal, Alabama 35898-5000
Email: William.D.Greene12.civ@mail.mil
Email: Rafael.A.RosadoMarrero.civ@mail.mil

David Loines, Area Director
Vincent Mazzotta, Size Specialist
Office of Government Contracting, Area II
U.S. Small Business Administration
Parkview Towers
1150 First Avenue, Suite 1001
King of Prussia, PA 19406
Email: David.Loines@sba.gov
Email: Vincent.Mazzotta@sba.gov

John W. Klein, Esq.
Assoc. General Counsel for Procurement Law
Office of General Counsel
U.S. Small Business Administration
409 Third Street, SW, Fifth Floor
Washington, DC 20416
Email: OPLService@sba.gov

*Patricia Lee*

Patricia Lee
Office of Hearings and Appeals